**Albert and Evelyn DUMAS**

v.

**Max CLELAND, Administrator of Veterans Affairs, and Robert Zigenhine, Veterans Services Officer for the White River Junction Regional Office of the United States Veterans Administration, in their official capacities.**

Civ. A. No. 77–169.

United States District Court, D. Vermont.

March 7, 1980.

James Libby, Vermont Legal Aid, Inc., Burlington, Vt., for plaintiffs.

William B. Gray, U. S. Atty., Dist. of Vt., Burlington, Vt., for defendants.

COFFRIN, District Judge.

. Plaintiffs Albert and Evelyn Dumas bring this action pursuant to 28 U.S.C. §§ 1331, 1361 and the due process clause of the fifth amendment[1] to challenge the method by which the Veterans Administration (V.A.) terminated Evelyn Dumas's status as the spouse-payee of her husband Albert's disability benefits. The defendants are Max Cleland, Administrator of Veterans Affairs, and Robert Zigenhine, Veterans Services Officer for the V.A.'s regional office in White River Junction, Vermont; plaintiffs sue them in their official capacities.

Earlier we denied plaintiffs' motion for class certification and denied defendants' motion for disqualification of plaintiffs' counsel. The parties have now submitted the case on stipulated facts and cross motions for summary judgment.

### . Facts

The stipulated facts are as follows. Plaintiff Albert Dumas is sixty-five years old and lives in Burlington, Vermont, with his wife, plaintiff Evelyn Dumas, and their son, Alexander. Albert Dumas is entitled to 100% disability benefits from the V.A. because he suffers undifferentiated schizophrenia. His condition also renders him incompetent to handle personally the management of his benefits; the V.A. appointed his wife Evelyn as spouse-payee for this purpose on June 19, 1968.

On October 4, 1976, a V.A. field attorney visited plaintiffs' home to investigate a report that Albert Dumas was not receiving the full benefit of his V.A. disability payments. The attorney informed Albert that the V.A. was going to terminate Evelyn's status as Albert's spouse-payee. Albert then voluntarily executed an application for appointment of a guardian to administer his affairs. The attorney personally notified Evelyn of this action on October 8, 1976. Neither plaintiff received written notice.

---

1. Plaintiffs abandoned their original assertion that we have jurisdiction under the Tucker Act, 28 U.S.C. § 1346, and under the Administrative Procedure Act, 5 U.S.C. §§ 702, 703. Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 4 (filed March 15, 1979).

On October 8, 1976, the V.A. attorney presented Albert Dumas's application to the Chittenden County Probate Court. He recommended Peter Handy be appointed guardian, and the court followed his recommendation without an evidentiary hearing. Peter Handy served in that capacity from October 8, 1976, to March 17, 1977, when the court discharged him and appointed Evelyn Dumas as Albert's legal custodian. She now receives funds on behalf of her husband. During Peter Handy's tenure as guardian he received compensation at the rate of five percent of Albert's monthly benefit allotment, for a total of $197.00.

Plaintiffs do not challenge the V.A.'s substantive decision to terminate Evelyn Dumas's status as spouse-payee of Albert's benefits. The only question is whether due process or federal statutes required the defendants to provide either or both the plaintiffs with notice and a hearing before terminating Evelyn Dumas's fiduciary spouse-payee status.[2]

### *Jurisdiction*

■ Defendants contend that we lack jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claim fails to raise a substantial federal question. Section 1331(a) grants jurisdiction to district courts irrespective of the amount in controversy when the action is against an agency of the United States and the claim arises under the Constitution, laws or treaties of the United States. *See Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The Supreme Court has consistently limited federal jurisdiction to the extent that "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) (citation omitted). In the Court's view an insubstantial federal question is present in a claim that is obviously without merit or a

claim that is clearly foreclosed by prior decision. *Id.* at 537, 94 S.Ct. at 1379. In light of this reasoning we disagree with defendants. Plaintiffs' claim asserts the deprivation of a fundamental right by an agency of the United States. We cannot say at this juncture that their claim is obviously without merit. Furthermore we have found no prior decisions that foreclose plaintiffs' claim and defendants have brought none to our attention. The court therefore has jurisdiction under 28 U.S.C. § 1331(a).

Plaintiffs also invoke 28 U.S.C. § 1361 as a separate basis for jurisdiction. That section provides that federal district courts shall have jurisdiction of actions in the nature of mandamus against officers or employees of the United States or its agencies.

Since we take jurisdiction under section 1331(a) we need not decide whether we have jurisdiction under section 1361 as well. We note however that the plaintiffs claim that the defendants have a clear duty under the Constitution to provide the plaintiffs with notice and hearing before termination of Mrs. Dumas as spouse-payee. In *Barnett v. Califano*, 580 F.2d 28, 31 (2d Cir. 1978), the appellate court affirmed this court's determination under section 1361 to enjoin unreasonable delays in the administrative hearing process regarding supplemental security disability claims. *Barnett v. Califano*, No. 74–270 (D.Vt. May 5, 1975). Although not exactly parallel to the case at hand it is reasonable to assume from the holding in *Barnett* that jurisdiction under section 1361 would lie if the plaintiffs' contention is correct as to the duty which they allege was owed to either or both of them. *But see J. C. Penney Co. v. United States Treasury Department*, 319 F.Supp. 1023, 1030 (S.D.N.Y.1970), *aff'd*, 439 F.2d 63 (2d Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971).

■ Defendants also contend that plaintiffs' claim is barred by 38 U.S.C. § 211

---

2. The original Complaint included the assertion that defendants may only proceed to procure guardianship for those in Albert Dumas's situation pursuant to Vermont's Uniform Veterans' Guardianship Act, Vt.Stat.Ann. tit. 14, §§ 3101–3121. This claim has been withdrawn and is no longer for the court's consideration.

which provides that decisions of the Veterans Administrator on questions of law or fact under laws administered by the V.A. shall be conclusive and may not be reviewed by a court of the United States. We have faced this question before, *Morgan v. Cleland*, No. 78–83 at 5 (D.Vt. September 18, 1979), and our analysis remains the same. Section 211 bars review only of those administrative actions that involve "the interpretation or application of a particular provision of the statute to a particular set of facts." *Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974). It does not bar a claim that the V.A.'s procedures violate constitutional rights.

### Discussion

#### 1. The Constitutional Claim.

Plaintiffs candidly recognize that the indispensable predicate to due process entitlement is deprivation of a protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 590 (1972); *see Goldberg v. Kelly*, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 1016–17, 25 L.Ed.2d 287 (1970).

To determine this issue we must focus on the very narrow question presented by this case. Albert Dumas has not had his benefits reduced [3] or terminated. He has not been deprived of the free use of his benefits, as he lost that freedom in 1968. As a result of V.A. action, Albert Dumas lost only the services of his wife as payee of his benefits. The only question before us is whether he has in these circumstances such an interest in retaining a particular person as his payee that the V.A. may not terminate that person's office without affecting Albert's liberty or property interests.

We must also consider the interests of Evelyn Dumas that are affected by the V.A.'s action in this case. Her position in the situation presented here was not one of entitlement to benefits but one of fiduciary office. There is no allegation that she was entitled to profit from her position and the stipulated facts are devoid of anything that would make such a conclusion plausible. Although she might be considered an indirect beneficiary of her husband's disability payments, the V.A. did not reduce or terminate these payments. We agree with the District Court of New Mexico that a spouse-payee has no property interest in that status that demands due process protection.[4] *Sena v. Roudebush*, 442 F.Supp. 153, 154–55 (D.N.M.1977). We hold that Evelyn Dumas was not entitled to due process in the termination of her status as spouse-payee of her husband's disability benefits.

Albert Dumas, to be sure, has lost something, but we are unpersuaded that it is something that may not be taken without due process. There is some surface appeal to the argument that a spouse as payee might be superior to all other payees in terms of convenience of access and sensitivity to needs. But the statutory obligation of all fiduciaries is the same, and the recipient has no right to expect more of a spouse serving as payee than he does of a nonfamilial payee. As we noted above, Albert Dumas's property interest in the substantive benefits of his disability entitlement remained unchanged by the V.A.'s action. He lost whatever liberty interest he might have had in the management of those funds in 1968. The claim that a spouse as payee allows family control of the funds that would otherwise be lacking is without merit for two reasons. First, the very nature of the payee arrangement is to remove control from an incompetent beneficiary. To the

---

3. Plaintiffs contend that the funds paid out to the court appointed guardian reduced Albert's benefits, but the stipulated facts indicate this was the result of Albert's voluntary application. On the state of facts before us, we cannot say that the V.A. reduced, even indirectly, Albert Dumas's benefits.

4. Plaintiffs' counsel conceded at the hearing that Mrs. Dumas had no property interest in her husband's V.A. benefits.

extent that a spouse as payee permitted the beneficiary to exercise control that an unrelated payee would not, the spouse would violate a fiduciary duty. Second, the fiduciary obligations of a payee are the same whether the payee is a spouse or a stranger—a spouse may not exercise control in any way different than a stranger. Finally, the V.A.'s action did not concern the relationship between husband and wife. It was directed only to the relationship between fiduciary and beneficiary, and we perceive no spousal relations affected by it despite the claim of plaintiffs' counsel that Mr. Dumas's right to marital privacy was a cognizable liberty interest of which he was deprived by the V.A.'s actions. We hold that Albert Dumas was not entitled to due process in the termination of his wife's status as spouse-payee of his disability benefits.

2. The Statutory Claim.

■ Plaintiffs also contend that their rights to notice and hearing prior to Evelyn Dumas's termination derive from statute. Since we have determined that the V.A.'s decision in this case is not one affecting the payment of benefits or the granting of relief, 38 C.F.R. § 3.103 is inapplicable. There is no issue in this case that involves a claim to benefits.

■ Neither does 38 U.S.C. § 3202 grant procedural rights to plaintiffs. Section 3202(b)[5] permits the Administrator to appear in a court with jurisdiction of a court-appointed fiduciary to present claims that such fiduciary has breached his trust. It

does not mandate such procedure with respect to an administratively appointed spouse-payee, and plainly permits the V.A. Administrator in his discretion to suspend payments to any fiduciary who neglects or refuses to administer his trust according to law.

*Conclusion*

For the foregoing reasons we grant defendants' motion for summary judgment and deny plaintiffs' motion. The Clerk shall enter judgment for the defendants. No costs.

---

5. (b) Whenever it appears that any guardian, curator, conservator, or other person, in the opinion of the Administrator, is not properly executing or has not properly executed the duties of his trust or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are inequitable or in excess of those allowed by law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then the Administrator may appear, by his duly authorized attorney, in the court which has appointed such fiduciary, or in any court having original, concurrent, or appellate jurisdiction over said cause, and make proper presentation of such matters. The Administrator, in his discretion, may suspend payments to any such guardian, curator, conservator, or other person who shall neglect or refuse, after reasonable notice, to render an account to the Administrator from time to time showing the application of such payments for the benefit of such incompetent or minor beneficiary, or who shall neglect or refuse to administer the estate according to law. The Administrator may appear or intervene by his duly authorized attorney in any court as an interested party in any litigation instituted by himself or otherwise, directly affecting money paid to such fiduciary under this section.