In the Matter of the GUARDIANSHIP AND and CONSERVATORSHIP OF Edwin BLUNT, an incapacitated person.

No. A4–04–119.

United States District Court, D. North Dakota, Northwestern Division.

Feb. 15, 2005.

See also 2004 WL 2554588.

## MEMORANDUM OPINION AND ORDER FOR JUDGMENT

MILLER, United States Magistrate Judge.

This case was commenced by the filing of a petition in state district court for Williams County North Dakota on behalf of Edwin Blunt ["Blunt"], an incapacitated veteran, by his guardian and conservator Grant P. Archer ["Petitioner"]. The petition, which is dated August 10, 2004, alleges that the United States Department of Veteran's Affairs ["VA"], an agency of the United States, unlawfully stopped direct depositing Blunt's VA benefits into a fiduciary account established by Petitioner. While not named as parties, there is no question that the petition seeks affirmative relief from the VA or its Secretary ["Secretary"]. The petition requests court intervention and "enforcement" and was served upon the VA along with a notice scheduling a hearing for September 30, 2004.[1]

Prior to the scheduled hearing, the United States removed the petition to this court. On October 29, 2004, this court denied Petitioner's motion for remand concluding the court has jurisdiction over the removed petition. Subsequently, upon consent of the parties, the case was referred to the undersigned to conduct all further proceedings.

A short bench trial was held on the petition on January 19, 2005. Attorney Peter H. Furseth appeared for Petitioner. Assistant United States Attorney Shon Hastings appeared for the VA. The trial consisted of the testimony of three wit-

Peter Haroldson Furuseth, Williston, ND, for Plaintiff.

Shon Hastings, U.S. Attorney's Office, Fargo, ND, for Defendant.

---

1. The fact Petitioner seeks affirmative relief from the VA was also confirmed by Petitioner's request at trial that the court order the VA to resume making payment of VA benefits to Petitioner as Blunt's guardian and conservator, which, as discussed below, would amount to a reversal of the VA's selection of the Veterans Home Administrator as the authorized payee of Blunt's VA benefits.

nesses and the introduction of a handful of exhibits.

## I. BACKGROUND

Petitioner is the Public Administrator for Williams County, North Dakota. As Public Administrator, he provides fiduciary assistance, such as acting as a conservator or guardian. Petitioner has served as the Public Administrator for Williams County since 1989.

Petitioner is the court-appointed conservator and guardian for Edwin Blunt, a mentally incapacitated veteran. Petitioner was appointed Blunt's conservator and guardian by the state district court for Williams County, North Dakota in late 2002. Shortly after his appointment, Petitioner moved Blunt out of his home in Williston, North Dakota and into the Eastern Montana Veterans Home at Glendive, Montana. The Eastern Montana Veterans Home ["Veterans Home"] is a private, not-for-profit residential nursing facility that serves veterans and their spouses.

Soon after his appointment, Petitioner established a fiduciary account into which Blunt's VA benefits were direct deposited. Petitioner used the VA benefit money, along with Blunt's social security benefit money ["SSN benefits"], to pay for Blunt's care at the Veterans Home.

For most of the period of time that Blunt has been at the Veterans Home, the monthly cost for his care has exceeded his available resources, which primarily has been limited to his monthly VA and SSN benefits. When this has occurred, Blunt has become eligible for Medicaid for so long as the total amount of his available resources during any month has not exceeded $2000. When Blunt is eligible for Medicaid, Blunt normally is required to pay the Veterans Home what he receives in VA and SSN benefits, less Petitioner's 5% administration fees. When the Veterans Home receives the money, $90 per month is set aside in an account at the Veterans Home for Blunt's personal use. The remainder is applied to the cost of his monthly care with Medicaid reimbursing the Veterans Home for the difference (less a monthly payment that the VA makes directly to the nursing home) based upon a daily "Medicaid rate" that is somewhat lower than the daily "private pay" rate.

After Blunt first became Medicaid eligible, there have been two occasions when he has not qualified for Medicaid because his combined resources exceeded the eligibility threshold. The first time was for several months in early 2004. The exact reason for his ineligibility at that time is not entirely clear, but it appears to have been the combined result of an accumulation of monthly VA and SSN benefit money with a several month hiatus in Petitioner not making Blunt's monthly payments to the Veterans Home because of billing issues. The second time was later in 2004 after Blunt received a one-time reimbursement for past VA benefits that resulted from a retroactive increase in benefits. Currently, Blunt is on "private pay" status with the Veterans Home. However, he will again become Medicaid eligible once the residual from this one-time payment has been exhausted to pay for his care at the Veterans Home since each month a portion of the one-time payment is being consumed for his monthly care.

Initially, for reasons that are not entirely clear, the VA was unaware that Petitioner was administering Blunt's VA benefits and that Blunt had been placed in the Veterans Home. At some point, during a discussion with North Dakota VA personnel about other veterans under his care, Petitioner advised he was also administering Blunt's estate, including Blunt's VA benefits, but that he had not yet been officially designated by the VA as the authorized payee. Petitioner advised the

North Dakota VA personnel he was uncomfortable about this situation and was told by the VA personnel that they would take care of it. During or about the same time, Kate Porter, who works in the business office for the Veterans Home, questioned VA personnel as to why Blunt had not qualified for a larger VA pension and was advised by VA personnel that they did not show Blunt in their system as being in a nursing home. An application for increased benefits was then submitted to the VA on Blunt's behalf. Whether it was the result of Petitioner's contact with VA personnel or Kate Porter's contact questioning the amount of Blunt's benefits, or both, the VA's Fiduciary and Field Examination Unit in North Dakota requested in April 2004 that a field examination and report be prepared for Blunt.

The Fiduciary and Field Examination division of the VA administers the VA's Fiduciary Program, which, in part, is charged with responsibility of looking after the welfare of those receiving VA benefits. The VA's Fiduciary Program includes advising beneficiaries of their eligibility for VA and other federal and state benefits, assessing the competency of VA beneficiaries and determining whether they need assistance in managing their benefits, and determining the person or entity who is best suited to be the payee of the beneficiaries' benefits.

The field examination requested by the North Dakota VA Fiduciary and Field Examination Unit was conducted by Montana VA field examiner Colleen Grandy. Her examination included a trip to the Veterans Home on May 21, 2004, during which she visited with Blunt and also with the administrator and the business manager of the Veterans Home. Following her examination and assessment, Grandy recommended that the administrator of the Veterans Home ["Veterans Home Administrator" or "Administrator"] be designated as the payee of Blunt's veteran benefits and that the direct deposit of benefits into the fiduciary account administered by Petitioner be terminated.

The last direct deposit that was made to the fiduciary account administered by Petitioner was on or about June 1, 2004. Thereafter, the VA paid the monthly benefits to the Veterans Home Administrator pursuant to Grandy's recommendation that the Administrator be designated as the payee.

Grandy prepared a form report (exhibit 10) in which she designated the Veterans Home Administrator as the authorized payee of the Veterans Benefits. In making the designation, she checked the box on the form that indicated this was the "INITIAL" designation and not a "SUCCESSOR" designation, which was another option, among others, on the form. Petitioner does not dispute that this determination was the VA's first official designation of an authorized payee for Blunt's benefits after he was determined to be incapacitated by the VA.

Grandy also prepared a two-page written memorandum (exhibit 11) summarizing the results of her investigation and also restating her recommendation regarding who should be the designated payee. This memorandum, which is undated, was apparently finalized after the VA acted upon Grandy's recommendation that the Veterans Home Administrator be designated as the authorized payee. This is because the memorandum references a telephone call that Grandy had with Petitioner during which Petitioner provided Grandy with the balance in Blunt's fiduciary account as of July 19, 2004, which was after the first receipt of the monthly VA benefit funds by the Veterans Home directly from the VA, and during which Petitioner complained about the fact that he had not been designated as the authorized payee of Blunt's VA benefits.

Neither Grandy, nor anyone else at the VA, consulted with Petitioner prior to designating the Veterans Home Administrator as the authorized payee. Petitioner first discovered he had not been designated the authorized payee when the monthly deposits of VA benefits to the fiduciary account administered by him ceased.

In her written memorandum, Grandy, among other things, made the following findings, conclusions, and recommendation:

a. Grandy determined that Blunt lacked the capacity to manage his VA benefits and also stated the following:

The [Veterans Home] staff stated that his guardian/conservator has been very difficult to deal with. They have made numerous calls to him requesting information or funds and he either will not call them back, or he is gruff with them.

b. Grandy discussed her telephone call with Petitioner writing in part:

VA benefits are $1375/mo which are going direct deposit to the Guardian in a North Dakota account. When I spoke to the Guardian/Conservator he provided me with the balance in his account as of 7/19/04 which was $1860.43. He would not provide me with account numbers. He also stated that he received a $97.18/mo fee which was allowed by the court, which he states is 5% of the total income. He advised me that I could not appoint the Administrator of the Nursing Home as Payee, because he had a court order. I explained that the veteran was located in Montana and that within the VA we did have the discretion to appoint under the Federal Fiduciary Program a Federal Fiduciary. The SS benefit of $568.60 is going to the Conservator. Conservator stated that he would call the Fargo RO and

the presiding judged and was upset that we would "have the fox watch the hen house" by paying the Administrator of this facility. He also stated that if he was not going to receive the VA funds that he would terminate this appointment and "see how the Administrator deals with it."

c. Grandy determined that Blunt's estate is limited to Blunt's monthly VA and SSN benefits, except for a one-time payment for retroactive VA benefits, which at that point had not yet been paid, but for which payment was expected shortly. She noted that the one-time "retro payment" would eventually be exhausted due to the monthly cost of Blunt's care and that he would again become Medicaid eligible.

d. Grandy determined that Blunt was receiving adequate care at the Veterans Home.

e. In the section discussing what the method of payment of VA benefits should be, Grandy concluded:

Due to the Conservator/guardian being located in North Dakota, and the difficulty the home has had getting information, I will appoint the Administrator of this facility as an Institutional Payee. This facility handles other veterans and does an excellent job. Direct deposit should be cancelled. This is the most effective method of payment. No character witnesses needed due to this being an institution and currently handling other VA residents.

f. Grandy recommended:

Appoint Administrator of the Eastern Montana Veterans Home as Institutional Payee. No accounting necessary, all funds will go towards his care.

Petitioner's principal complaint is that the selection of the Veterans Home Ad-

ministrator as the authorized payee was unlawful and a usurpation of his powers as court-appointed guardian and conservator. However, he also complains about the fact that the selection of the Administrator was done without prior notice and consultation with him as Blunt's court-appointed guardian and conservator. Finally, he argues he is better suited to administer Blunt's VA benefits and should have been chosen because:

a. he already had been appointed as Blunt's guardian and conservator by the state court;

b. there is a conflict-of-interest in the Veterans Home providing services for a fee and then being of a custodian of Blunt's funds;

c. he is in the best position to watch out for Blunt's interests, particularly to insure that Blunt receives Medicaid when he is Medicaid eligible;

d. he is obligated to report to the state court regarding the disposition of Blunt's assets and it is more difficult for him to do so if the VA benefit funds are being disbursed directly to the Veterans Home; and

e. he is the designated payee for the SSN benefits.

Petitioner also challenges the information in Grandy's memorandum that suggests he was less than diligent in the performance of his duties and difficult to deal with -most of which came from officials at the Veterans Home. The financial records from the Veterans Home indicate there were some delays in payments to the Veterans Home, but these delays appear to be attributable to billing issues. Petitioner testified he did not believe he had been difficult to deal with and that the people at the Veterans Home did not appreciate either the fact that he needed certain financial information in order to prepare his financial reports for the court or his persistence in requiring that the information be provided.

Given the court's limited jurisdiction as discussed later herein, it is not for this court to sort out and determine *de novo* who is correct with respect to the complaints made by the Veterans Home to Grandy at the time she conducted her investigation. However, in fairness to Petitioner, there is no evidence of malfeasance on his part and no evidence that he, at any time, failed to properly account for all of the funds entrusted to his care.[2] Also, it appears Petitioner made a good choice in terms of his placement of Blunt in the Veterans Home; the record indicates he is being well cared for and is relatively happy at this facility.

Grandy writes in her report that Petitioner refused to provide certain account numbers during her telephone conversation with Petitioner. This is disputed by Petitioner. Again, given the court's limited jurisdiction, this is not an issue for the court to resolve *de novo*.[3]

Finally, the record indicates that the Veterans Home is bonded, that there are

---

2. The court suspects that the Veterans Home's complaints were the result of a mutual lack of communication and understanding between Petitioner and the Veterans Home and, perhaps, some personality conflicts.

3. The court suspects this happened, but notes that Petitioner did provide Grandy with an account balance and that any failure to provide other information likely was the result of a deteriorating phone conversation, rather than any absolute refusal to provide the information. It appears Petitioner was upset about the manner in which he had been treated by the VA, and, perhaps, justifiably so, given the VA's failure to notify Petitioner that it was terminating the direct deposits to Blunt's account, prior to doing so, and its failure to consult with Petitioner, in his capacity as Blunt's court-appointed guardian and conservator, about who should be the appropriate payee.

others who also look after Blunt's care (including a social worker employed by the Veterans Home and the Dawson County Office of Public Assistance, which monitors Medicaid eligibility), and that the Veterans Home can provide (and has to date provided) Petitioner with the financial information he may need.

## II. DISCUSSION

The issues presented for the court's decision are the following: (1) whether the failure to select Petitioner as the authorized payee of the VA benefits was unlawful given that Petitioner had already been appointed by the state court as Blunt's conservator and guardian; (2) whether the VA should have given prior notice and consulted with Petitioner before making its decision as to the authorized payee; and (3) whether the VA otherwise erred in selecting the Veterans Home Administrator as the payee of Blunt's VA benefits in lieu of Petitioner.

### A. Jurisdiction

 Before considering the petition on the merits, the court must first determine whether it has subject matter jurisdiction. Also, since the petition seeks affirmative relief from an agency or official of the United States, the court must also determine whether there has been a waiver of sovereign immunity. This is because

"[t]o sue the United States, [plaintiff] must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction." *V S Ltd. P'ship v. Dep't of Housing and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "[T]he United States, as sovereign, is immune from suits unless it has consented to be sued." *Peterson v. United States*, 428 F.2d 368, 369 (8th Cir.1970).

### 1. Subject matter jurisdiction under 28 U.S.C. § 1331

The determination of who should be the payee of VA benefits for an incapacitated veteran is clearly governed by federal law as set forth in 38 U.S.C. § 5502(a) and 38 C.F.R. Part 13. Consequently, 28 U.S.C. § 1331 provides a basis for subject matter jurisdiction. This is true, even though it appears that the state court lacked jurisdiction to order the VA (or any of its officials) to resume making the deposits of VA benefits to Petitioner's fiduciary account.[4] 28 U.S.C. § 1441(f) permits the court, upon removal, to determine any claim for which it has jurisdiction even if the state court from which the claim was removed lacked jurisdiction over the claim.

However, § 1331 is not enough to empower the court to consider the merits. There must also be a concomitant waiver of sovereign immunity, which § 1331 has been construed not to provide. *E.g., Murray v. United States*, 686 F.2d 1320, 1324 (8th Cir.1982).[5]

**4.** The court is not aware of any statute that would have provided the state court with the necessary waiver of sovereign immunity to allow it to grant the affirmative relief requested by Petitioner against the VA. As explained later herein, 38 U.S.C. § 5502 does not provide the requisite waiver. However, even if it did, the waiver would only arise if the VA elected to appear or intervene in the state court proceeding based upon the express terms of the statute. *See e.g., Peterson v. United States*, 428 F.2d 368, 369 (8th Cir. 1970) ("A corollary to the immunity doctrine is the rule that the United States may define

the conditions under which actions are permitted against it."). In this case, the VA removed the action and only then answered as to the merits.

**5.** Since the court has determined there is jurisdiction under § 1331, there is no need to consider also whether the court has jurisdiction under § 1361 (the mandamus statute). However, since Petitioner has not raised any constitutional objections and since the Secretary is afforded substantial discretion in the selection of the authorized payee, as discussed in more detail below, jurisdiction under

## 2. No waiver of sovereign immunity under 38 U.S.C. § 5502

As noted above, the Secretary's authority to appoint an authorized payee for VA benefits is found in 38 U.S.C. § 5502(a). In subsection (b) of § 5502, the Secretary is provided the authority to appear in the following proceedings:

1. the Secretary "may appear" in the court that has appointed a fiduciary (or in any court having original, concurrent, or appellate jurisdiction over the fiduciary) when it appears the fiduciary has not properly executed the trust duties of the fiduciary, when the fiduciary is attempting to collect fees that are inequitable or unlawful, or when the fiduciary is not making the necessary payments for the benefit of the ward, and "make proper presentation of such matters."

2. the Secretary "may appear or intervene" as an interested party in any litigation "directly affecting money paid to such fiduciary under this section."

The court first considers whether the grants of authority to appear or intervene in subsection (b) provide the necessary waiver of sovereign immunity in this case. It is well-established that a waiver of sovereign immunity must be express and unequivocal and cannot be inferred. *E.g., United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Preferred Risk Mut. Ins. Co. v. United States,* 86 F.3d 789, 791–93 (8th Cir.1996). In examining § 5502(b), there is no language that explicitly authorizes the granting of affirmative relief as to the VA or the Secretary. In

fact, the Secretary's decision of whether or not to appear or intervene in a particular proceeding is entirely voluntary. Moreover, the grant of authority to appear or intervene does not *require* the conclusion that consent has been given for the imposition of adverse affirmative relief. This is because there are a number of situations in which the VA can appear and intervene without having to subject itself to the grant of affirmative relief, such as, intervention to assert matters that are limited to supervision of court-appointed fiduciaries, intervention to recover money improvidently spent by fiduciaries, intervention in state court proceedings (like this one originally) to assert jurisdictional defenses, etc. *See* 38 C.F.R. §§ 14.705.

Based on the absence of language explicitly authorizing the imposition of adverse affirmative relief and the fact that the grant of authority to appear or intervene is equally consistent with the Secretary's involvement in litigation that does not require the granting of such relief for the litigation to be efficacious, the court concludes that § 5502(b) does not provide the clear and unequivocal consent required for the imposition of affirmative relief against the VA or it Secretary.

However, even if it did, the court concludes that the waiver does not extend to court review of payee determinations by the Secretary under § 5502(a), and, particularly, as in this case, the selection of a payee who is not a court-appointed fiduciary. This is because the subject matter of the authorized appearances and interventions under § 5502(b) is limited to actions involving the supervision of fiduciaries and money being paid to them-not to their initial selection as an authorized payee and, particularly, not to the selection of

---

§ 1361 is questionable. *See e.g., In re Sebben,* 815 F.2d 475, 478 (8th Cir.1987); *Belles v. Schweiker,* 720 F.2d 509, 511–514 (8th Cir.

1983); *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1104 (8th Cir. 1973).

payees who are not court-appointed fiduciaries. Rather, the selection of authorized payees is a matter that is committed to the discretion of the Secretary under § 5502(a).[6]

### 3. Waiver of sovereign immunity under the APA/ inapplicability of the "no-court-review" provisions of 38 U.S.C. § 511

▮ The Administrative Procedure Act, codified at 5 U.S.C. § 701, *et. seq.*, provides a waiver of sovereign immunity for challenges to administrative action that seek non-monetary relief. *E.g., Black Hills Institute of Geological Research v. South Dakota School of Mines and Tech.*, 12 F.3d 737, 740 (8th Cir.1993). However, § 702 makes it clear that the APA does not trump other statutes that limit court review of administrative action.

Title 38 dealing with veterans' affairs does contain a no-court-review statute, which is found at § 511 and which reads as follows:

(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

(b) The second sentence of subsection (a) does not apply to—

(1) matters subject to section 502 of this title;

(2) matters covered by sections 1975 and 1984 of this title;

(3) matters arising under chapter 37 of this title; and

(4) matters covered by chapter 72 of this title.

Based on the plain language of § 511(a), a legitimate argument can be made that the Secretary's selection of the payee is a decision "under a law that affects the provision of benefits" within the meaning of the statute.[7] A contrary, and more limited reading of § 511(a), however, is that it applies only to determinations of eligibility and the amount of benefits and not to a collateral determination of the kind involved in this case.

*Dumas v. Cleland*, 486 F.Supp. 149 (D.Vt.1980) appears to be the only case to address the issue of the applicability of § 511 to an authorized payee determination made by the Secretary. In *Dumas*, the court rejected the Secretary's argument that § 511 barred court review, but only because plaintiff's challenge in that case was limited to claims of constitutional violations. The implication from the court's opinion is that it would have otherwise considered § 511 to bar any nonconstitutional challenges.

This court is persuaded, however, that the more limited reading of § 511 is the correct one, despite the language in *Dumas* suggesting the contrary, and that § 511 does not bar court review of payee

---

6. Given the court's decision that there is no waiver of sovereign immunity under § 5502(b), the court does not have to consider the scope of review under § 5502(b), *i.e.,* whether the court could have considered the issues presented by the petition *de novo* based upon a trial record or whether the court's review would still be limited to consideration of the administrative record subject to the

"arbitrary and capricious" standard of review provided by the APA.

7. Since the Secretary's decision was made pursuant to § 5502 (which is a part of chapter 55 of Title 38), this is not a matter that falls within one of the exceptions set forth in § 511(b).

determinations by the Secretary. There are several reasons for this conclusion.

First, the language "under a law that affects the provision of benefits" is not the original language of § 511. As chronicled by the Supreme Court in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the relevant language used to read "concerning a claim for benefits or payments under any law administered by the Veteran's Administration," which, as it pertains to this case, is narrower and more supportive of the interpretation that payee determinations by the Secretary are not included. *Id.* at 368–368 n. 9, 94 S.Ct. 1160 (discussing the legislative history). According to the Supreme Court, the language was changed to overrule an interpretation by the D.C. Circuit that the prior language barred court review only of the Secretary's initial claim determination and not subsequent decisions regarding benefit determinations. *Id.* 368–374, 94 S.Ct. 1160. The fact the change was made for this limited purpose supports the interpretation that § 511 was never intended to bar court review of Secretary decisions, such as the one in this case, that are collateral to the actual claim for benefits or payments.

Second, Congress has provided an alternate scheme for review of benefit determinations that are otherwise barred from general court review under § 511(a). This alternate scheme includes agency review of benefit determinations made by the VA under § 511(a) by an administrative Board of Veteran's Appeals and the right to appeal Board decisions to the Court of Veteran's Appeals, a specially constituted Article I court. 38 U.S.C. chs. 71 & 72. The regulations adopted by the VA to implement this alternate scheme for review do not make provision for, much less mention, review of payee determinations by the Secretary. One presumes this would not be the case if payee determinations were thought to be included within the scope of § 511(a) and subject to review under the alternate scheme of review. *See* 38 C.F.R. Part 3 (benefit determination and initial administrative review), Part 13 (governing payee determinations and other fiduciary activities with no apparent mechanism for review) & Part 19 (appeals of benefit determinations to the Board of Veterans Appeals).

Further, the fact that payee determinations under § 5502 are not included within the alternate scheme of review (and consequently not within the scope of § 511(a)) appears also to be the conclusion of the Court of Veterans Appeals. In *Willis v. Brown,* 6 Vet.App. 433 (1994), the court affirmed a Board of Veterans Appeals' decision rejecting a fee application from a court-appointed fiduciary that was based upon a claim that she should have been appointed the authorized payee under § 5502 rather than another person selected by the Secretary. The court affirmed the rejection of the fee claim, but stated it lacked jurisdiction to review the Secretary's decision as to which of the two persons should have been selected as the authorized payee. The court held that its jurisdiction is limited by statute to review of Board of Veterans Appeals' determinations and that the decision of who should have been selected as the authorized payee is a matter committed to the discretion of Secretary under § 5502 and not a matter for Board review. *Id.* at 434, 436.

Third, the more limited interpretation of § 511 is consistent with the case law which holds that no-court-review statutes are to be strictly construed. *E.g., Johnson v. Robison*, 415 U.S. at 373–374, 94 S.Ct. 1160; *Winslow v. Walters*, 815 F.2d 1114, 1116–1117 (7th Cir.1987).

### 4. Conclusions regarding jurisdiction

■ Based on the foregoing, there is subject matter jurisdiction under 28 U.S.C.

§ 1331 and a waiver of sovereign immunity under 5 U.S.C. § 702. Consequently, the court reviews the VA decisions challenged by the petition under the APA.

## B. Review of the Secretary's decisions under the APA

### 1. Standard of review

In *National Wildlife Federation v. Whistler,* 27 F.3d 1341 (8th Cir.1994), the Eighth Circuit described the scope of review under the APA for matters that have not been the subject of a prior adjudicatory hearing as follows:

> [A] court may reverse [only if the agency decision] ... was an abuse of discretion, contrary to law, or arbitrary and capricious. 5 U.S.C. § 706(2)(A) (1988). Under this standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). As long as the agency provides a rational explanation for its decision, a reviewing court cannot disturb it. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). This narrow standard of review reflects the deference given to agencies' expertise within their respective fields. *State Farm,* 463 U.S. at 42–43, 103 S.Ct. at 2866–67. Moreover, substantial deference is given to an agency's interpretation and application of governing statutes, *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984), and particularly its own regulations, *Ford Motor Credit Co.*

*v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

*Id.* at 1344.

### 2. Court's determination of the record for review

When this matter came on for trial, the court had not sorted through what has turned out to be a myriad of difficult jurisdictional and other legal issues given the unusual nature of the case. Further, both parties appeared prepared to give testimony and neither objected to the trial proceeding. However, now that the court has determined that its jurisdiction is limited to conducting a review of the agency decision under the APA, the court concludes Petitioner is not entitled to a trial upon which the court can consider *de novo* the challenged actions of the VA in the case. Rather, as noted above, the court's review is limited to determining whether the challenged actions are contrary to law, arbitrary, or capricious. Under the APA, this review normally is to be confined to the agency record. In *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court explained:

> "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 [93 S.Ct. 1241, 1244, 36 L.Ed.2d 106] (1973). The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 [91 S.Ct. 814, 28 L.Ed.2d 136] (1971).

*Id.* at 743–744, 105 S.Ct. 1598.

■ While the general rule is that the court must look to the agency record,

there are recognized exceptions. The courts have held that consideration of after-the-fact affidavits or testimony is sometimes necessary for background purposes, to help determine whether the agency record is complete as to the issues being raised, or to help determine whether the agency considered all of the required factors. Also, after-the-fact evidence can be considered to help understand the agency decision when the agency record is inadequate, but only in the rare instances when remand for creation or supplementation of the record is not the preferred option. *See generally Florida Power & Light Co. v. Lorion,* 470 U.S. at 743–744, 105 S.Ct. 1598; *Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Esch v. Yeutter,* 876 F.2d 976, 992 n. 166 (D.C.Cir.1989); *Friends of the Earth v. Hintz,* 800 F.2d 822, 828–829 (9th Cir.1986); *Asarco, Inc. v. U.S. E.P.A.,* 616 F.2d 1153, 1158–61 (9th Cir.1980).

In making its decision in this case, the court has focused primarily upon the administrative record that exists, which is contained in trial exhibits 10, 11, and 15. However, given the limited nature of the record, the court has considered Petitioner's trial testimony to help explain and give context to his objections to the VA's decision. The court, to a much lesser degree, has taken into account the testimony of Kate Porter with regard to the background information she presented with respect to the Veterans Home, as well as the financial summaries of the historical handling of Blunt's VA benefits by the Veterans Home (exhibits 12, 13, and 14), the accuracy of which was not contested by either party and the underlying information of which was relied upon by both parties in dealing with the Veterans Home. The court has also considered, primarily for background purposes, the testimony by field examiner Grandy in which she described the process she followed in making her examination and recommenda-

tion and the portion of Grandy's testimony that addresses her contacts, or lack of them, with the Petitioner, given the nature of Petitioner's complaints. As to Grandy's recommendation and the VA's ultimate decision, the court focuses primarily upon the findings and conclusions in the contemporaneous reports prepared by Grandy (exhibits 10 & 11), which the court has determined are part of the administrative record. The trial testimony given by Grandy explaining her decisions was largely cumulative to what is contained in the administrative record, but did add some clarification.

### 3. Court's review of the VA's decision

### a. VA did not violate the law in failing to appoint Petitioner as the authorized payee

■ Petitioner claims that the VA lacked the power to appoint the Veterans Home Administrator as payee of the VA benefits given that Petitioner had already been appointed Blunt's conservator and guardian by the state court. Petitioner describes VA's action as a usurpation of his court-appointed authority. The court does not agree.

As noted above, the determination of who should be the payee of VA benefits for an incapacitated veteran is governed by federal law, as set forth in 38 U.S.C. § 5502 and 38 C.F.R. Part 13, and not state law. *Willis v. Brown,* 6 Vet.App. 433, 435 (Vet.App.1994); *see Douglas v. Minnesota,* 2002 WL 273153; *Dumas v. Cleland,* 486 F.Supp. 149 (D.Vt.1980). Under § 5502 and its implementing regulations, the Secretary (or his authorized designee) is charged with making the selection of an appropriate payee for an incapacitated veteran from a list of a number of parties. *Id.;* 38 U.S.C. § 5502(a)(1); 38 C.F.R. §§ 13.55(b). The

Secretary may, but is not required to, designate the state court-appointed guardian or conservator as the authorized payee. *Willis v. Brown,* 6 Vet.App. at 435 (concluding it was within VA's authority to select the director of a medical center as the authorized payee in lieu of the state court-appointed conservator); 38 C.F.R. §§ 13.55(b) & 13.59.

Consequently, the failure to select Petitioner based upon his status as Blunt's court-appointed conservator and guardian was not contrary to law.

**b. VA did not violate the law by failing to give notice and consult with Petitioner prior to making its decision**

■ Petitioner complains that the VA did not notify him, in his capacity as Blunt's conservator and guardian, prior to ceasing the payment of benefits to the fiduciary account that he administered on Blunt's behalf. He also complains about the failure of the VA to consult with him before selecting the Veterans Home Administrator as the authorized payee.

■ While the court believes that the failure of the VA to give notice and to consult with Petitioner, in his capacity as court-appointed conservator and guardian, before taking the actions it did was somewhat "heavy-handed" and demonstrated a lack of sensitivity in terms of federal-state

relations, it was not unlawful.[8] There is nothing in § 5502, or its implementing regulations, that requires prior notice to, or consultation with, a state court-appointed fiduciary. *Dumas v. Cleland,* 486 F.Supp. at 153 (reaching the same conclusion). Similarly, there are no rights under the APA to notice, or for the prior opportunity to provide contrary evidence, with respect to non-adjudicatory agency determinations. *E.g., Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 653–656, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). However, the failure to consult with the person who is the court-appointed conservator and guardian is certainly a factor that the court can consider in determining the arbitrariness of the VA's ultimate decision, which issue is discussed in the next section.

**c. VA's selection of the Veterans Home Administrator as the authorized payee was not unlawful, arbitrary, or capricious**

■ The chief officer of an institution providing care and treatment to the veteran is included in the list of authorized payees. 38 C.F.R. §§ 13.55(b) & 13.61. Consequently, the Secretary's selection of the Veteran's Home Administrator as the authorized payee did not violate § 5502 or the implementing regulations.

---

8. The court limits consideration of Petitioner's complaints of lack of notice and prior consultation to his claim regarding the arbitrariness of the VA's actions (which is discussed in the next section) and to whether or not the failure to give notice or consult violated either § 5502 or the APA. This is because Petitioner did not claim, either in his petition or at trial, that the VA violated Blunt's constitutional rights or that Blunt was deprived of any property interest. In fact, the record indicates that Blunt continued to receive the full benefit of his VA payments after the Veterans Home Administrator was selected as

the authorized payee. However, even if the petition could be construed as encompassing a constitutional claim, the court agrees with the reasoning of the district court in *Dumas v. Cleland,* 486 F.Supp. 149 (D.Vt.1980), that Blunt had no constitutional right to prior notice or prior right to be heard. Further, Petitioner voiced his objections to Grandy contemporaneous to when the challenged decisions were made and during a time when the decisions could have been easily reversed. In fact, Petitioner's objections were included in Grandy's written memorandum report.

This leaves only Petitioner's argument that he should have been selected as the authorized payee instead of the Administrator, i.e., he was the more preferable choice under the circumstances. In this regard, the amount of discretion afforded the Secretary in making the selection of the appropriate payee under 38 U.S.C. § 5502(a) and the implementing regulations is substantial. The only limitations are that the person designated must be within the list of persons authorized under the regulations (38 C.F.R. § 13.55), that the person selected be the "best suited" to receive the benefits on behalf of the veteran (Id.), and that the selection otherwise be in the "best interests" of the veteran (§ 5502(a)). See also Willis v. Brown, 6 Vet.App. at 435–436; Douglas v. Minnesota, 2002 WL 273153 at *2 ("[T]here is no apparent limitation on the authority of the VA to assign or reassign federal payees except that such decisions must be in the best interests of the veteran.").

In reviewing the administrative record, the court notes that the VA conducted an investigation prior to making its decision, which included: a site visit to the nursing home to visit with Blunt and the officials at the nursing home; a review of the scope of Blunt's estate; a review of how Blunt's VA benefits had been handled (including an awareness of the funds being direct-deposited into a fiduciary account administered by Petitioner, as court-appointed conservator and guardian); a determination of how Blunt's benefits would be handled if the Veterans Home Administrator was appointed the authorized payee including a determination as to the capability of the Administrator to handle the funds and any potential consequences for Blunt; and consideration of the merits of selecting Veterans Home Administrator over Petitioner. The court also observes that the VA contemporaneously articulated its reasons for selection of the Veterans Home Administrator that included: Blunt's limited estate; the determination that it was unnecessary to funnel the VA benefits through a conservator, given Blunt's limited estate and a determination and that direct payment to the Veterans Home was more efficient; the problems the Veterans Home reported it was having with Petitioner; and the determination that the Veterans Home Administrator is a suitable and trustworthy payee based upon the investigation and prior experience with the Veterans Home as being an authorized payee for other veteran residents. Finally, the court also notes that the investigation and the recommendation for the selection of the Veterans Home Administrator were made by a person experienced with fiduciary administration and following the VA's guidelines for administration of its Fiduciary Program (exhibit 15).

Applying the required standard of review, the court finds that the VA took into account all of the necessary factors, including Blunt's "best interests" and a determination of who was "best suited" to receive the benefits on Blunt's behalf. Further, the court is not able to say that the Secretary's selection of the Veterans Home Administrator as the authorized payee, and not Petitioner, was irrational given: Blunt's limited estate, including the fact that all of his VA benefits are required to pay for his care at the Veterans Home (less his monthly personal use allowance); Grandy's expert conclusion that direct payment to the Administrator would be more efficient in terms of benefit administration; the fact that direct payment avoids payment of Petitioner's conservatorship fees (a factor the Secretary is expressly authorized to take into account under 31 C.F.R. § 13.64); and the determination that the Administrator was a suitable payee. In addition, there were also the concerns expressed by the Veterans Home about the Petitioner. However, the court concludes there is a rational basis for the Secretary's

896

decision even in the absence of those concerns. Finally, the fact the VA did not consult with Petitioner prior to making its determination does not alter the court's conclusion regarding its rationality since the VA collected the information necessary for its decision by other means and made its own determination regarding Blunt's best interests, after visiting with Blunt and others.

In summary, the Secretary's decision to appoint the Veterans Home Administrator as the authorized payee, and not Petitioner, was neither arbitrary, capricious, nor a clear error of judgment.

## III. CONCLUSION

The Court has jurisdiction to consider the merits of the petition. However, the court's review is limited under the APA to a determination of whether the decisions of the VA being challenged were arbitrary, capricious, or otherwise unlawful. Since the court concludes the decisions were lawful and not arbitrary, capricious, nor a clear error of judgment, the petition should be dismissed with prejudice.

### *ORDER FOR JUDGMENT*

Based on the foregoing, the court **ORDERS** that judgment be entered dismissing *with prejudice* Petitioner's petition dated August 10, 2004.